## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **BRENNEN SPINKS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No.: MJM-23-3184** |
| **v.** | * | |
| | * | |
| **STATE OF MARYLAND,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Brennen Spinks ("Plaintiff") filed this civil action against the State of Maryland, state prison officials, and a correctional officer (collectively, "Defendants") alleging negligence and civil rights violations arising from an assault Plaintiff sustained while incarcerated at a Maryland correctional facility. Compl., ECF 2.

This matter is before the Court on Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment, ECF 13, and Plaintiff's Motion to Extend Time for Service, ECF 19. The motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Defendants' motion and shall deny Plaintiff's motion as moot.[1]

---

[1] The parties have also filed motions for leave to exceed page limitations, which shall be granted.

I.      **BACKGROUND**

In June 2020, Plaintiff was incarcerated at Central Maryland Correctional Facility ("CMCF"), a minimum-security prison in Carroll County, Maryland designated to hold pre-release inmates. Melendez Decl., ECF 13-4, ¶ 3.[2]

A.  **Assault on Plaintiff**

On June 9, 2020, between 8:08 and 8:14 p.m., Plaintiff was violently assaulted by three other inmates in CMCF's B-Building. ECF 2-3 (Spinks grievance) at 1, 3; ECF 2-5 (Spinks appeal grievance) at 1–4; Melendez Decl. ¶¶ 6–7; ECF 14-3 (video camera footage) at 00:08–6:05. At 8:08 p.m., a prison closed circuit camera briefly captured an inmate chasing and punching another inmate in a room adjacent to a day room in the B-Building. ECF 14-3, at 00:08. Multiple walls obstructed the camera's view of the apparent assault in progress. *Id.* At 8:09 p.m., Plaintiff was captured in conversation with another inmate and then walking into a blind spot on the other side of the room. *Id.* at 1:07–17. At 8:14 p.m., Plaintiff was captured on the floor in a disheveled state. *Id.* at 6:06. He crawled into the day room, got to his feet, and stumbled around while using his sleeve to wipe apparent blood from his face. *Id.* at 6:06–35. Plaintiff walked into the bathroom, appeared to converse with another inmate and then returned to the room where he was attacked. *Id.* at 6:35–8:03. Throughout these events, the reactions of other inmates in the area were subdued. *Id.* at 00:08–6:05. Plaintiff claims that his assailants stole some of his property, roughly $258 in value. ECF 2-3 at 3.

---

[2]      In his Complaint, Plaintiff alleges he was then held at Dorsey Run Correctional Facility in Howard County, Maryland. Compl. ¶ 12. However, Defendants state that (1) Plaintiff was actually incarcerated at CMCF in Carroll County, Maryland, and (2) Dorsey Run Correctional Facility is located in Anne Arundel County, Maryland, Defs.' Mem., ECF 13-1, at 5; *see also* Greene Affidavit, ECF 13-3, ¶ 7, to which Plaintiff stipulates in his opposition to Defendants' motion, Pl.'s Opp'n, ECF 18, at 4–5.

The assault occurred during a "mass movement," a time during which a large number of inmates enter or leave the yard. Melendez Decl. ¶ 6. During a mass movement, "it is routine practice that the door to the unit will be propped open until movement stops, so that the doors do not have to be unlocked and opened for each individual [inmate] as they move on or off the tier." *Id.* Plaintiff's assailants did not live in B-Building.

Defendant Correctional Officer Raymond Melendez was on duty and stationed in the Control Center to monitor activity on the B-Upper tier at the time of the assault. *Id.* The Control Center, also known as "the bubble," is "a secured room with thick walls, steel doors, and break-resistant windows." *Id.* ¶¶ 6, 10. Because of the Control Center's reinforced construction, it is difficult for officers inside the Control Center to hear activity occurring outside. *Id.* ¶ 10. Officers in the Control Center of B-Upper tier have no access to camera footage; they instead observe inmates on the tier by looking through the various windows in different directions. *Id.* ¶¶ 10–11.

Plaintiff alleges that Officer Melendez was asleep when the assailants propped open a door with a trash can to obtain entrance into B-Building and attack Plaintiff. Compl. ¶ 41; ECF 2-3 at 1, 3.

Officer Melendez contends that he was not sleeping but was alert and focused on monitoring the incarcerated population during mass movement. Melendez Decl. ¶ 7. He states that Plaintiff's assailants took advantage of a blind spot and that he could not see the assault because his view was obstructed. *Id.* Officer Melendez observed Plaintiff "walk[ing] around the dorm casually and, [] cleaning himself up in the bathroom and returning to his bunk briefly," before coming to a window of the Control Center to request assistance.[3] *Id.* ¶ 8. Officer Melendez could not communicate with Plaintiff because of the Control Center's reinforced construction, so he

---

[3]     Plaintiff stated in his prison grievances that, in addition to cleaning himself up, he packed up his scattered belongings and called his father before going to the Control Center. ECF 2-3 at 3; ECF 2-5 at 1.

contacted a patrol officer via radio to assist Plaintiff. *Id.* ¶ 8. Once the patrol officer arrived, Officer Melendez opened the door of the Control Center and was told for the first time that Plaintiff had been assaulted and needed medical attention. *Id.* ¶ 9. The patrol officer agreed to take Plaintiff to the medical bay, and Officer Melendez returned to the Control Center to continue monitoring the tier, "which could not be left unsupervised." *Id.*

Officer Melendez affirms that he was not aware of any specific threats to Plaintiff, nor to any other inmate at CMCF, that Plaintiff did not have any documented enemies at the facility, and that there was no unusual activity in the time leading up to the assault. *Id.* ¶¶ 7, 12. Plaintiff alleges in his Complaint that another inmate had been violently attacked with a knife by an assailant who had improperly gained access to the B-Building two days prior to Plaintiff's assault, and that this prior incident should have put Defendants on notice to prevent similar incidents from occurring. Compl. ¶¶ 20–22. However, Defendants present a declaration by a records custodian for the Intelligence and Investigative Division ("IID") of the Maryland Department of Public Safety and Correctional Services ("DPSCS") confirming that there is no record of the prior incident described in the Complaint. Brengle Decl., ECF 25-1, ¶ 5. The records custodian states that another inmate in the B-Building had received a minor puncture wound in his neck on July 4, 2020, after Plaintiff's assault, after midnight, and not during mass movement. *Id.* ¶ 6. There was no evidence that the assailant in July had come to B-Building from a different area of the prison.

### B. Medical Treatment

Plaintiff and the patrol officer arrived at CMCF's medical bay at 9:00 p.m. on the night of the assault, and Plaintiff was treated "for injuries to his right eye, broken nose and skull sustained from [the] assault." ECF 14-2 (IID report), at 4. Plaintiff was treated by Nurse Ogenseye Uthman at CMCF and was later transported to Carroll County Hospital in a state van. *Id.* From the county

hospital, Plaintiff was transported again via ambulance to Johns Hopkins University Hospital ("Johns Hopkins"). *Id.* Plaintiff arrived at Carroll County Hospital at 11:30 p.m. that night, and he arrived at Johns Hopkins at 5:13 a.m. the following morning, on July 10, 2020. ECF 14-1 (medical records) at 329.

Plaintiff reported "immediate vision loss" and was found to have a fracture in the orbital floor of his right eye. *Id.* at 38. It was noted in his medical records that his right eye had a previous orbital floor fracture in 2014, for which he did not receive surgery. *Id.* at 40. The physician who treated Plaintiff at Johns Hopkins told him that his vision loss would not be permanent. *Id.* at 48. Surgery was not found to be necessary. *Id.* at 329. Indeed, Plaintiff's medical records indicate that his vision quickly improved and was back to normal on July 26, 2020. *Id.* at 255–60 ("[Plaintiff] woke up and sat at the edge of bed, said to this writer that he can see in his right eye. Nurse asked [Plaintiff] to explain how it happened, [Plaintiff] replied that since yesterday afternoon[,] his vision has returned. Sclera of the right eye is clear, no sign of injury.").

### C.  Procedural Background

On July 9, 2023, Plaintiff filed a Complaint in the Circuit Court for Howard County against the State of Maryland, Warden David Greene, Secretary of DPSCS Carolyn Scruggs,[4] former Warden Carol Harmon, and Correctional Officer Melendez (collectively "Defendants"), in their individual and official capacities. ECF 2. Plaintiff alleges negligence, gross negligence, vicarious liability, and violations of the Eighth and Fourteenth Amendments to the U.S. Constitution. Defendants removed the case to this Court on November 21, 2023. ECF 1.

---

[4]     Plaintiff stipulates to dismissing all claims against Scruggs in her official capacity. Pl.'s Opp'n at 14–15.

On January 12, 2024, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 13. Plaintiff filed a response in opposition to the motion, ECF 18, and Defendants filed a reply to Plaintiff's opposition, ECF 24.

On March 14, 2024, Plaintiff filed a Motion to Extend Time for Service, ECF 19, which is unopposed.

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss for Insufficient Service of Process and Insufficient Process

When a defendant moves to dismiss for improper service pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, "the plaintiff bears the burden of proving adequate service[.]" *Parrish v. Leithman*, Civ. No. JKB-23-0342, 2024 WL 1621205, at *2 (D. Md. Apr. 15, 2024) (quoting *Scott v. Md. State Dep't of Lab.*, 673 F. App'x 299, 304 (4th Cir. 2016)). A plaintiff must serve process on all defendants within ninety days of filing the complaint. Fed. R. Civ. P 4(m). Rule 4(m) requires the district court to extend the time for a plaintiff to serve process where the plaintiff shows good cause for the failure to do so in the time allotted. Good cause is generally shown where the plaintiff has been diligent and has been unable to properly serve the defendant on account of external factors. *See Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). A failure to request an extension of time to serve before the deadline has lapsed will "undercut [a] claim of good cause." *Id.* However, even where the plaintiff cannot show good cause for failure to effect proper service of process, the district court retains the discretion to grant an extension of time. *Gelin v. Shuman*, 35 F.4th 212, 219–21 (4th Cir. 2022) (abrogating *Mendez v. Elliot*, 45 F.3d 75 (4th Cir. 1995), which held that good cause was required for an extension). "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action[.]" Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments; *see also Horenkamp v. Van Winkle*

*& Co.*, 402 F.3d 1129, 1132–33 (11th Cir. 2005) (finding that the district court did not abuse discretion in granting extension of time to serve process, in absence of good cause, where the statute of limitations had run).

A defendant may also move to dismiss a complaint for insufficient process under Rule 12(b)(4). "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service . . . . A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Wright & Miller, Fed. Prac. and Proc. § 1353 (3d ed. 2016). Nonetheless, it is not uncommon for the two defenses to be analyzed together. *See Miller v. Mariner Fin., LLC*, No. 3:10-CV-33, 2010 WL 2365400, at *3 (N.D. W. Va. June 8, 2010).

### B.  Motion to Dismiss for Failure to State a Claim

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Pursuant to Rule 12(b)(6), a defendant may file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable

7

and . . . a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted).

Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court may consider documents "explicitly incorporated into the complaint by reference," "those attached to the complaint as exhibits," and "document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as [they were] integral to the complaint and there is no dispute about [their] authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023) (cleaned up).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56[,]" but "[a]ll parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The U.S. Court of Appeals for the Fourth Circuit "has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice and (2) a reasonable opportunity for discovery." *Canty v. Corcoran*, Civ. No. GLR-18-1404, 2022 WL 899278, at *4 (D. Md. Mar. 28, 2022) (citing *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).

Converting a motion to dismiss to a summary judgment motion is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. Du Pont de Nemours & Co.*, 637 F.3d at 448. The party opposing conversion may file a declaration pursuant to Rule 56(d) explaining the reasons why "it cannot present facts essential to justify its opposition" without discovery. Fed. R. Civ. P. 56(d); *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Yet failure to file such an affidavit is "not necessarily fatal where the 'nonmoving party has adequately informed the court that . . . more discovery is necessary.'" *Sol v. M&T Bank*, --- F. Supp. ----, 2024 WL 327086, at *4–5 (D. Md. Jan. 29, 2024) (quoting *Harrods*, 302 F.3d at 244–45); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017) (courts have "complete discretion" to deny conversion even where no Rule 56(d) affidavit has been filed). Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. 5 Wright & Miller, Fed. Prac. & Proc. § 1366 (3d ed. 2004).

## C.  Motion for Summary Judgment

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

The court must view all the facts, including reasonable inferences drawn from them, in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

## III.   ANALYSIS

### A.  Conversion to a Motion for Summary Judgment

Defendants styled their motion to dismiss alternatively as one for summary judgment and attached exhibits for the Court's consideration, thereby placing Plaintiff on notice that the motion could be disposed of under Rule 56. *See, e.g.*, *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 178 n.2 (4th Cir. 2018) ("[Plaintiff] was on notice that the motion could be converted to one for

summary judgment because [defendants] styled it in the alternative, and [plaintiff] similarly submitted an opposition brief in the alternative.").

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows *by affidavit or declaration that, for specified reasons*, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." (emphasis added).

Plaintiff generally asserts in his opposition brief that discovery is needed to obtain facts essential to countering Defendants' evidence. Pl.'s Opp'n, ECF 18, at 17, 19. However, Plaintiff does not offer any sworn statement explaining with particularity his need for discovery. *See Nader v. Blair*, 549 F.3d 953, 962–63 (4th Cir. 2008) ("[A party] cannot withstand a motion for summary judgment by merely asserting in its brief that discovery [is] necessary.") (citation omitted); *Harrods*, 302 F.3d at 244 ("We have warned litigants that . . . a reference to Rule 56(f)[5] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit.") (cleaned up).

In *Harrods*, the Fourth Circuit cautioned that "parties who ignore Rule 56(f)'s affidavit requirement do so at their peril." *Id.* at 246 n.19; *see also Roberts v. Wexford Health Sources, Inc.*, Civ. No. ELH-20-0340, 2022 WL 2971949, at *8–9 (D. Md. July 26, 2022), *aff'd*, No. 23-6232, 2023 WL 4888846 (4th Cir. Aug. 1, 2023) (granting pre-discovery summary judgment in favor of defendant where pro se plaintiff failed to file a Rule 56(d) affidavit); *cf. McClure v. Ports*, 914 F.3d 866, 874–75 (4th Cir. 2019) (affirming pre-discovery summary judgment in favor of the defendant, even where the plaintiffs filed a 56(d) motion specifying what evidence they sought to

---

[5]     Rule 56(d) was codified as Rule 56(f) at the time of the *Harrods* decision.

discover, because plaintiffs failed to identify any factual issues that were actually essential to their opposition).

Plaintiff did not respond to Defendants' motion with a Rule 56(d) affidavit identifying in specific terms factual issues for which specific forms of discovery were needed. Accordingly, this Court shall resolve Defendants' motion under Rule 56 where appropriate, considering the exhibits attached to Defendants' motion.

### B. Statute of Limitations

Defendants assert that Plaintiff's claims should be dismissed as barred by applicable statute of limitations. Defs.' Mem., ECF 13-1, at 40–41. The Court is not persuaded.

Plaintiff's constitutional claims, brought under 42 U.S.C. § 1983, are subject to a three-year statute of limitations pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5–101, the statute of limitations for personal injury torts. *See Alvarez v. Corr. Med. Servs., Inc.*, Civ. No. WDQ-10-179, 2014 WL 4686651, at *3 (D. Md. Sept. 16, 2014), *amended*, Civ. No. WDQ-10-179, 2014 WL 5320643 (D. Md. Oct. 15, 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007), and *Grattan v. Burnett*, 710 F.2d 160 (4th Cir. 1983), *aff'd*, 468 U.S. 42 (1984)). Section 5–101 also prescribes a three-year limitations period for Plaintiff's state law negligence claims. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)).

Here, Plaintiff "possesse[d] sufficient facts about the harm done to him" on July 9, 2020, the date he was attacked by other inmates. The three-year limitations period applicable to Plaintiff's claims expired on July 10, 2023, because July 9, 2023, was a Sunday. *See* Md. Rule 1-203(a)(1) ("In computing any period of time prescribed . . . by any applicable statute, the day of

12

the act, event, or default after which the designated period of time begins to run is not included. .

. . The last day of the period so computed is included unless . . . it is a Saturday, Sunday, or holiday,

in which event the period runs until the end of the next day that is not a Saturday, Sunday, or

holiday . . . .").

      Accordingly, the Court finds that Plaintiff's claims were filed within the applicable statute

of limitations.

### C.  Service of Process

      Defendants have moved to dismiss Plaintiff's claims on the grounds that Plaintiff has failed

to effect both service of proper process and proper service of process. Defs.' Mem. at 11–14.

Specifically, Defendants contend Plaintiff failed to serve exhibits attached to his Complaint,

attempted to serve them by Certified Mail without requesting Restricted Delivery in violation of

Md. Rule 2-121(a), and attempted to serve defendants Harmon and Melendez at Dorsey Run

Correctional Facility, where they neither worked nor authorized acceptance of service on their

behalf. *Id.*

      Plaintiff conceded in his opposition brief that he failed to serve proper process but argued

that he had until March 20, 2024, to perfect service. Pl.'s Opp'n at 9–14. On March 14, 2024,

Plaintiff filed a Motion to Extend Time for Service, noting that because he is suing officials in

their individual capacities, proper service requires locating their personal addresses, which he

contends is a difficult task. ECF 19, ¶ 15.

      "When a case is removed to federal court, a plaintiff may be afforded additional time to

complete service or to obtain issuance of new process if, prior to the case's removal, 'service of

process has not been perfected prior to removal,' or 'process served proves to be defective.'" *Rice

v. Alpha Sec., Inc.*, 556 F. App'x 257, 260 (4th Cir. 2014) (citing 28 U.S.C. § 1448). In *Rice*, the

court permitted the plaintiff an additional 120-day period to effect proper service. *Id.* The court did so, however, pursuant to Federal Rule of Civil Procedure 4(m), which permitted a plaintiff 120 days from the filing of the complaint to effect service of process on the defendant. The year after the *Rice* decision was published, the Federal Rules were amended to reduce the time for serving a defendant from 120 days to 90 days. *See* Fed. R. Civ. P. 4 (2015 Amendment).

The parties appear to operate under the understanding that a plaintiff has 120 days from the date of removal to perfect service, *see* Defs.' Mem. at 12; Pl.'s Opp'n at 10–11, 14; ECF 19, making the deadline for service March 20, 2024, but that is incorrect. Plaintiff had 90 days after removal to perfect service of process. *See Patten v. HCL Am., Inc.*, No. 5:16-CV-47-FL, 2016 WL 1267165, at *2 (E.D.N.C. Mar. 31, 2016) (citing Fed. R. Civ. P. 4(m), and 28 U.S.C. § 1448). Because the case was removed to this Court on November 20, 2023, *see* ECF 1, the deadline for Plaintiff to serve each Defendant was February 19, 2024. That date had already passed by the time Plaintiff filed his Motion to Extend Time for Service on March 14, 2024. *See* ECF 19.

Although the Court does not find Defendants to have been evasive, and the deadline for service passed before Plaintiff sought an extension, the Court declines to dismiss the instant case for failure to effect proper service of proper process. Because the statute of limitations for Plaintiff's claims ran on July 10, 2023, a dismissal on those grounds would, in effect, be fatal to Plaintiff's efforts to seek redress. *See Scovens v. Univ. of Md. Faculty Physicians, Inc.*, Civ. No. JMC-23-1080, 2023 WL 5234966, at *3 (D. Md. Aug. 14, 2023) ("Federal courts are here to resolve cases on the merits, to avoid procedural defaults whenever possible, and to issue the sanction of dismissal only in extreme cases of plaintiff misconduct." (quoting *Coomes v. Moran*, Civ. No. ELH-22-2639, 2023 WL 3847427 (D. Md. June 6, 2023)).

However, the Court also declines to grant Plaintiff's Motion to Extend Time for Service. As discussed *infra*, the Court shall grant summary judgment for Defendant on Plaintiff's federal claims and decline to exercise supplemental jurisdiction over his remaining state claims. Dismissal of Plaintiff's state claims on that ground will provide Plaintiff an opportunity to re-file his remaining claims in state court. *See* 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 583 U.S. 71 (2018).

### D.  Section 1983 Claims

In Count Five of his Complaint, Plaintiff asserts claims for alleged federal constitutional violations under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. This statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).[6]

The Eighth Amendment and Fourteenth Amendment to the U.S. Constitution forbid "unnecessary and wanton infliction of pain" by virtue of their guarantee against cruel and unusual

---

[6]     State officials may only be sued under 42 U.S.C. § 1983 in their individual capacities. *Gregory v. Currituck Cnty.*, No. 21-1363, 2022 WL 1598961, at *2 (4th Cir. May 20, 2022) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Moreover, pursuant to the Eleventh Amendment to the U.S. Constitution, the State of Maryland is immune from suit under § 1983 and has not waived sovereign immunity from such suits in federal court. *See, e.g.*, *Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 495 (D. Md. 2015). Accordingly, to the extent Plaintiff's § 1983 claims are brought against the State of Maryland or any of the individual defendants in their official capacities, they are hereby dismissed.

punishment by state governments. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). Notably, the Constitution "proscribes more than physically barbarous punishments." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It also "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . .'" *Id.* (citation omitted). Thus, the Eighth Amendment also "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from physical attack, maintaining inhumane conditions of confinement, and failing to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

There is no respondeat superior liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Supervisors may be found liable only if the plaintiff shows they "acted personally in the deprivation of [his] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1973), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that a subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's

16

inaction" and the plaintiff's constitutional injury. *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). "[E]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread," and plaintiffs must show that the offending conduct "has been used on several different occasions." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799).

To establish liability for deliberate indifference, a plaintiff must satisfy a two-part inquiry with objective and subjective components. *See Raynor*, 817 F.3d at 127. Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

As to the subjective component, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires either actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and that the inference was actually drawn. *Id*. at 837. Further, "deliberate indifference is a very high standard—a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999), *abrogated on other grounds by Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023); *see also Jackson*

*v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one).

In the instant case, Plaintiff brings several deliberate indifference claims under the Eighth and Fourteenth Amendments: failure to protect, conditions of confinement, and denial and/or delay of adequate medical care. Compl. ¶¶ 117–32.

### 1. Failure to Protect and Conditions of Confinement

In Count Five, Plaintiff alleges that Defendants violated the Eighth and Fourteenth Amendments by failing to provide Plaintiff with a safe environment, to ensure his health and welfare, and to protect Plaintiff from a physical attack, which resulted physical injuries and other damages. *See* Compl. ¶¶ 116–32. Defendants move for dismissal of, or summary judgment on, these claims. *See* Defs.' Mem. at 22–28.

Correctional officers have a duty to protect prisoners from physical attacks by other inmates. *See Rozier v. Case Manager Coordinator USP Lee*, No. 7:22-CV-00105, 2022 WL 1913442, at *2 (W.D. Va. June 3, 2022) (citing *Farmer*, 511 U.S. at 832). A failure to protect claim requires subjective awareness that the plaintiff is in danger. *See Farmer*, 511 U.S. at 834; *White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). "The Eighth Amendment imposes a duty on prison officials to 'provide humane conditions of confinement . . . and ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019), *as amended* (May 6, 2019) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). Reasonable measures must also be taken to guarantee an inmate's safety. *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

Here, however, there is no evidence in the record to suggest Officer Melendez had actual awareness of any facts to suggest Plaintiff was in danger of assault. Officer Melendez declares that he was not aware of any threats to Plaintiff or unusual activity prior to the assault and that he did not witness the assault. Melendez Decl. ¶¶ 7, 12.; *see also* Brengle Decl. ¶ 5 (no record of a similar assault two days prior). There is no dispute that he did not witness the assault. *Compare* ECF 2-3 at 1, 3, *with* Melendez Decl. ¶ 7. Officer Melendez declares that he was not sleeping at the time of Plaintiff's assault, but his view of the assault was obstructed. *Id.* Even if the Court were to accept Plaintiff's unsworn assertion that Officer Melendez was asleep, the officer would not have been capable of making the observations necessary to draw inference that Plaintiff was in danger at the time. *See Jones v. Nolin*, No. 2:17-CV-342-WKW, 2020 WL 3240574, at *7 (M.D. Ala. May 13, 2020), *report and recommendation adopted*, No. 2:17-CV-342-WKW, 2020 WL 3244007 (M.D. Ala. June 15, 2020) ("The law is clear that a correctional officer responsible for an inmate's safety cannot be liable for a risk of which he is unaware.") (citing cases). Plaintiff does not contend that Officer Melendez had fallen asleep deliberately, had ever previously fallen asleep during his shift, or that sleeping on duty was a common occurrence among correctional officers. Even if accepted, Plaintiff's bare allegation that Officer Melendez was sleeping while on duty, "at best, shows negligence, which is not actionable under 42 U.S.C. § 1983." *Shorter v. Russell*, Civ. No. 6:14-1843-TMC, 2014 WL 6909026, at *4 (D.S.C. Dec. 5, 2014) (citations omitted).

Accordingly, summary judgment shall be entered for the Defendants on Plaintiff's failure to protect and conditions of confinement claims.

### 2. Denial and Delay of Adequate Medical Care

Plaintiff also alleges in Count Five that Defendants violated the Eighth and Fourteenth Amendments by denying or delaying the provision of medical treatment following his assault on

June 9, 2020. *See* Compl. ¶¶ 116–32. Defendants move for dismissal of, or summary judgment on, these claims. *See* Defs.' Mem. at 28–31. Plaintiff concedes in his opposition brief that he eventually received adequate medical treatment, clarifying only that "the time it took for a correctional officer to notice the assault, come to the aide [sic] of Plaintiff, break up assailants and secure them, was unreasonable." Pl.'s Opp'n at 31. Plaintiff thus waives his claim for denial of adequate medical care.

A claim for delay of adequate medical care first requires the plaintiff to show that he had a diagnosed or obvious serious medical condition. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Court finds that Plaintiff did have an objectively obvious medical need: Plaintiff can be seen on video footage stumbling and bleeding from his face after the assault. ECF 14-5 at 6:06–35.

However, delay alone in the provision of medical treatment, without more, does not rise to the level of a constitutional violation. The delay itself must cause "substantial harm." *Smith v. Walker*, 845 F. Supp. 2d 673, 677 (W.D.N.C. 2012), *aff'd*, 476 F. App'x 417 (4th Cir. 2012) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993)); *cf. Webb v. Hamidullah*, 281 F. App'x 159, 167 (4th Cir. 2008) (plaintiff failed to show that the delay in treating his hernia caused his condition to worsen).

Notwithstanding Plaintiff's unsworn allegations, *see* Compl. ¶ 42, the record before the Court shows that Plaintiff suffered, at most, a minimal delay in the receipt of medical care. To the extent Plaintiff could have received medical attention at an earlier point, the delay was owed, at least in part, to Plaintiff spending time cleaning himself up, organizing his belongings, and calling his father before requesting assistance from Officer Melendez. *See* ECF 2-3 at 1; ECF 2-5 at 2. Further, Plaintiff stated in his grievances that it only took about one to two minutes to get Officer Melendez's attention once he made his way to the Control Center, after which a second officer

was quickly called to take Plaintiff to receive medical treatment. *Id.* Indeed, Plaintiff arrived at CMCF's medical wing at 9:00 p.m., just forty minutes after his assault. ECF 14-2 (IID report), at 4. There is thus no genuine dispute that once Plaintiff came to the Control Center, Officer Melendez quickly ensured that Plaintiff was on his way to receive medical care.

The Court has been presented no evidence that Officer Melendez was aware of any facts from which he could infer that Plaintiff was in need of medical attention before Plaintiff sought his assistance. Plaintiff alleges that Officer Melendez was asleep on duty and did not observe the assault, ECF 2-3 at 1, 3, and, Officer Melendez declares that he unaware that Plaintiff was injured until Plaintiff came to the Control Center, Melendez Decl. ¶ 7.

In sum, Plaintiff has presented no evidence of unreasonable or deliberate delay by any correctional officer in the provision of medical treatment following his assault, nor evidence that any delay by the officers resulted in substantial harm to Plaintiff. Accordingly, summary judgment shall be granted for Defendants on Plaintiff's claim for delay of adequate medical care.

### 3. Supervisory Liability

In Count Five, Plaintiff asserts claims of "supervisory and/or bystander liability" under § 1983 against DPSCS Secretary Scruggs, Warden Greene, and Warden Harmon. *See* Pl.'s Opp'n at 17–19; Compl. ¶¶ 116–32. A plaintiff cannot establish supervisory liability under § 1983 "by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Timpson*, 31 F.4th at 258 (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). Without evidence that Secretary Scruggs or Wardens Greene and Harmon should have been aware that Plaintiff was at risk prior to his assault and failed to act, Plaintiff cannot show that they were liable under § 1983.

Even accepting Plaintiff's unsworn allegation that Officer Melendez was sleeping on duty, Plaintiff has not presented any evidence to show that Secretary Scruggs or Wardens Greene or Harmon had any reason to know correctional officers were sleeping on duty or that any person incarcerated at CMCF, a minimum-security facility, was at risk of assault during mass movement. *See* ECF 25-1, ¶ 5 (no evidence of earlier attack during mass movement).

Because there is no genuine dispute of material fact as to any of Plaintiff's § 1983 claims, summary judgment shall be entered for Defendants as to Count Five. *See Catrett*, 477 U.S. at 325 (courts should grant motion for summary judgment where the non-movant lacks any evidence to support his case).

### E. Supplemental Jurisdiction

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims should summary judgment be entered in their favor on Plaintiff's § 1983 claims. Defs.' Mem. at 37–39. The Court agrees.[7]

A court may decline to exercise supplemental jurisdiction over any remaining state law claims after dismissing the federal claims which gave it original jurisdiction. 28 U.S.C. § 1367(c)(3); *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). Indeed, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Meyler v. Mayor & City Council of Ocean City*, --- F. Supp. 3d ----, 2024 WL 2846746, at *16 (D. Md. June 5, 2024) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Where a plaintiff's federal claims are dismissed before trial and

---

[7]     Plaintiff does not assert that this Court should retain jurisdiction over his state claims if the § 1983 claims are dismissed. *See* Pl.'s Opp'n at 27–28.

the remaining state law claims are neither tied closely to a federal question or federal policy, a court should decline to exercise supplemental jurisdiction. *See Ramsay v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525, 537 (D. Md. 2013), *aff'd*, 593 F. App'x 204, 2014 WL 6892717 (4th Cir. 2014) (citing *Gibbs*, 383 U.S. at 726–27).

In the instant case, following summary judgment on Plaintiff's § 1983 claims, his only remaining claims are for negligence under Maryland common law, which do not implicate any questions of federal law. The Court declines to exercise jurisdiction over the remaining state law claims. *See Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 563 (W.D. Va. 2000) (declining to exercise supplemental jurisdiction over a Virginia state prisoner's negligent infliction of emotional distress claim after dismissing his § 1983 claims); *Ramsay*, 948 F. Supp. 2d at 537 (declining to exercise supplemental jurisdiction over the plaintiff's state law claims after dismissing his federal claim, although they "share the same underlying facts"). Federal policy decidedly counsels against the exercise supplemental jurisdiction over state law tort claims that implicate the administration of a state prison. *Cf. Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("[T]he inquiry of federal courts into [state] prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution.").

Accordingly, Plaintiff's state negligence claims, Counts One through Four, shall be dismissed without prejudice.[8]

---

[8]      While a federal district court may, for want of subject matter jurisdiction, remand a case back to the state court from which it was removed, *see Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008), the Circuit Court for Howard County does not appear to be a proper venue for this action, *see* Compl. ¶¶ 1, 4–8; Greene Aff. ¶¶ 7–8; Melendez Decl. ¶¶ 1–2; Pl.'s Opp'n at 4–5.

Moreover, though the statute of limitations for Plaintiff's state law claims would have otherwise run in 2023, 28 U.S.C. § 1367(d) provides a plaintiff at least thirty days to refile his claims in state court. *See Artis*, 583 U.S. 71.

IV.     **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF 13) shall be granted. Summary judgment will be entered for Defendants as to Count Five, and Counts One through Four will be dismissed without prejudice. Plaintiff's Motion to Extend Time for Service (ECF 19) shall be denied as moot.[9]

A separate Order will follow.


___9/9/24___
Date

_____
Matthew J. Maddox
United States District Judge

---

[9]     The parties have briefed the issue of whether Plaintiff properly exhausted his administrative remedies under the federal Prison Litigation Reform Act ("PLRA") and the Maryland Prisoner Litigation Act ("MPLA") before filing suit. *See* Defs.' Mem. at 41–43; Pl.'s Opp'n at 33–35; Defs.' Reply, ECF 24, at 10. Plaintiff appears to have been released prior to the filing of the Complaint. *See* Compl. at 1 (noting Plaintiff's residential address in the case caption). Therefore, the exhaustion requirement does not apply to him. *See Francis v. Maryland*, Civ. No. ELH-21-1365, 2023 WL 2456553, at *17 (D. Md. Mar. 10, 2023) ("A former inmate who has been released is no longer 'incarcerated or detained' for the purposes of § 1997e(h) and therefore does not qualify as a 'prisoner' subject to the PLRA.") (quoting *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007)); *Cullen v. Somerset Cnty.*, Civ. No. WMN-10-0055, 2010 WL 2132794, at *4 (D. Md. May 25, 2010) (no exhaustion requirement under either PLRA or MPLA for a former inmate) (citing *Cofield*, 247 F. App'x at 414).